Hi everybody. So our first case this morning is Moses v. DA Philadelphia, 23-1403. Ms. Burton. Good morning and may it please the court. My name is Abigail Burton and I represent the appellant, Mr. Roy Moses. May I reserve three minutes of my time for rebuttal? Of course. Thank you. This court should reverse the district court's order dismissing Mr. Moses' habeas petition, excuse the procedural default of Mr. Moses' ineffective assistance of trial counsel claim, and grant Mr. Moses relief on the merits for several reasons. First, with respect to the underlying ineffective assistance of counsel claim, the claim is both substantial under Martinez v. Ryan and entitles Mr. Moses to relief on the merits because his attorney unreasonably failed to object to the erroneous calculation of Mr. Moses' prior record score when he was sentenced for drug offenses in 2015. So is that a bit speculative? I don't think so. There was long-standing Pennsylvania case law that defined what the Pennsylvania Code meant when it said that an out-of-state or federal offense should be treated as an equivalent Pennsylvania offense when it factors into a calculation of a prior record score under the sentencing guidelines. That goes back to 1987, the court's decision in Commonwealth v. Bolden, where it says you look at the elements of the offense and find the Pennsylvania equivalent after doing that analysis. So in this case, there were two offenses that factored into the prior record score. There was a robbery conviction in the Commonwealth that we don't dispute properly factored in as four points, and there was a 922G conviction from 2003 in the federal court that the pre-sentencing investigation report factored in as two points as equivalent to Pennsylvania Statute 6105. But you're saying it should be F3 and should be just one point? It should just be one point, correct, yeah. Because if you look at the elements of the not the same. And the analysis really starts there. The 922G conviction required a prior conviction for a crime with a term of imprisonment of a year or more, whereas 6105 requires conviction for a specific enumerated offense. Your friends on the other side argue that we should determine, we should consider for equivalency purposes, the fact that one of Mr. Moses' prior convictions is one of the enumerated offenses. Tell us why that's wrong. Sure. So first of all, the case law is clear that it's just an elements-based analysis. You don't look at the facts underlying the conviction unless you first look at the elements and find the Pennsylvania equivalent. Then the facts can be considered for grading purposes later on if the Pennsylvania equivalent has multiple grades of an offense. In this case, the elements are not the same. So that's really the only analysis that the court needed to undertake. Looking at the facts underlying the conviction doesn't matter. And that was emphasized in the court's decision in Spenny in 2015. But it also goes back to Commonwealth v. Bolden. There are two Pennsylvania Supreme Court cases, Commonwealth v. Shaw and Commonwealth v. Northrop, that both use the elements-based approach as well and didn't inquire at all into the facts underlying the conviction, even though in some of those cases, the facts underlying the conviction would have made them come within the ambit of the Pennsylvania statute. So to continue with the equivalent... I realized that Kuyper talked about preconditions. That was 05. That was an intermediate court. And then Jemison was... Jemison was a Pennsylvania Supreme Court decision. And it said elements. Practically speaking, what's the difference between preconditions and elements? I wondered the same thing. I think... That we're wondering together. It seemed that that was a distinction that the court made in Kuyper and in Patterson and some other cases in looking at this really specific issue of double counting, which under the sentencing guidelines, you're not allowed to double count a conviction that underlies the conviction that you're being sentenced for and also contributes to the grading of the offense. So that was kind of a unique circumstance in the context of the sentencing guidelines that the courts were considering there that led them to say the Pennsylvania or the underlying specific enumerated offense was more of a precondition than an element. But Jemison is a clear case from the Pennsylvania Supreme Court, decided the year before Mr. Moses was sentenced, that said that the specific enumerated offense, I think there is no question that the specific enumerated offense is an element of the crime. And even if you considered it a precondition, there is no question that the prior offense that requires... That carries a term of imprisonment of a year or more under 22G is an essential element of that offense. So even if you took out the specific enumerated offense from 6105, you still have a difference between the two statutes. So it's your position if counsel at sentencing had challenged the federal conviction, right? Yes. And the judge had agreed that it shouldn't be considered under the guidelines, it would not have made him a career criminal? Correct. If his counsel had made that argument at sentencing, there's a reasonable... And if the judge had accepted that argument. And if the judge had accepted the argument, there's a reasonable likelihood that his guidelines change would have then been 12 months lower than what it was. That brings me back to my original question. Isn't that a bit speculative? We have a couple of ifs here. Sure. So I think the important thing to emphasize with respect to that question is what we're looking at is in the context of an ineffective assistance of counsel claim is just a reasonable probability of a different outcome had counsel made the argument. This court has emphasized that's not a stringent standard. It said that's less than a preponderance standard. So it really, in order to carry that burden, it just has to be reasonable likelihood. And I think that the court's decision in Commonwealth v. Spenny, which was decided just a few months after Mr. Moses was sentenced, is an indication that a Pennsylvania court would have considered that argument seriously and potentially accepted it, and that Mr. Moses likely would have received a lesser sentence as a result. On that point, too, I want to emphasize that the sentencing court really started its analysis by asking about the prior record score, asking about the sentencing guideline range and the infants' gravity score. And the district attorney emphasized the importance of the RFEL prior record score in its argument for a higher sentence and a consecutive sentence. And then when the trial court gave its sentence, it specifically emphasized the pre-sentence investigation report and its view that Mr. Moses was a career criminal. So I think all of those points demonstrate that the trial court took the RFEL prior record score seriously in giving its sentence. And there's the sentence itself, which was started at the low end of the guideline range, which the trial judge subtracted 12 months for the issue of counsel not filing to revoke bail at a certain point. But the court really used the sentencing guideline range as its basis, as its starting point for a sentence, which is a good indication that had the guideline range been lower, Mr. Moses likely would have received a lower sentence as well. All right, Your Honor. How are you? May it please the court, David Mapiorski for Applebee's in this matter. If it would be all right, I would like to just jump right in and respond to one of your Honor's questions that you asked counsel for the other side about whether this, part of this argument is speculative. And at least in our view, this, what would have happened if an objection had been lodged is... Well, what was the sentence for the 922G offense? That he had initially gotten before this crime? I believe it was 15 months. I could be wrong about that. His sentence had run by the time he was convicted of this crime. If that sentence could be transmitted to the 6105, that still would be an F3, right? Not necessarily, Your Honor. The maximum number of the sentence that he got, I don't recall right now. But as long as if it's graded as an F2... What was the sentence then for the 922G1 violation? I'm saying I don't remember. I don't recall. I don't recall the maximum number that he received under that conviction. But even if it had been under the 10 years, that is the statutory maximum of an F2, it automatically make it categorized as an F3 would be my argument. And if you would allow me to go back to what I had been saying about whether it's speculative, I think that that point on prejudice is important and that there's, I believe, we believe there's very little likelihood that any objection would have been sustained or that... Except if he wasn't in effect under a state law career offender, it looked like the judge was just doing straight arithmetic, right? Well, the judge began his sentencing at the 7 to 14 near the maximum and then decreased it from there. Well, I'm saying even if that's if he had sustained the objection, what would his sentence had looked like? I'm expanding on an argument that I made in a footnote of the brief that was filed that is unlikely the objection would have been sustained and even less likely that his sentence would have been reversed on appeal. And we know that because so far no court in the Commonwealth has endorsed this argument, despite numerous opportunities to do so. Starting with the Keeper case that is cited in my brief, yes, it's an intermediate court and it had to do specifically with sentencing and calculating a prior record score. And subsequent to the Jemison case that we've all talked about, the Superior Court has had five opportunities to essentially overrule that Keeper case or distinguish it and they've declined every time. Are those opportunities in the equivalency context? They're in the calculating the prior record score contest. So no, not exactly. The real answer is here that there really isn't any completely on point, 100% case law, which would bring me to the initial argument that I made about deficient performance. Isn't it really incumbent then on counsel to make the argument? Yeah, I mean, it could be a full year off. I'm sorry, I don't understand the question. It's the, what was this? What was the probation? The equivalent of probation parole was, what, 84 months to 102? Is that right? Yes. And they asked, Mr. Moses' counsel asked for 60 to 120. The Commonwealth asked for 90 to 180 and the court gave, what, 72 to 144. So it looked to me like it just subtracted 12 from 84 and if you go down to five and then just doubled it to 144. So it seems as if had the score, the prior record score been five, it would have been less of a sentence and not for us to decide, but it seems like there's a darn good chance that he would have gotten a lesser sentence, which is not insignificant. I would disagree with part of what you just said, Your Honor. I would agree that I think if an objection was lodged and the court sustained the objection and his prior record score was reduced to five, maybe he would have gotten a lower sentence and that would count as prejudice in this case. My argument would be it's, there is no reasonable probability that the objection would have been sustained or that the conviction or that the sentence would have been lower than appeal. Because here's the point that it doesn't look as if there's a real Commonwealth counterpart to 922 G1. I mean, it's hard to say the 6105 really is an on-point counterpoint. Well, I, excuse me, I would disagree. I do think it is an equivalent. And I think that when the Superior Court. How so? Well, it shares, well, if you follow the Keeper line of cases that says that it's not, that the numerator list. And what if we tell you that we're going to follow the 2014 Supreme Court instruction as to what to do rather than the 2005 Keeper lower court instruction? Well, my only point would be that the state courts don't do that. That the Pennsylvania Superior Court just doesn't do that when it comes to sentencing and prior record scores. Just doesn't do what? Follow that Jemison 2014 case. They just ignore their highest court in the Commonwealth. And, you know, I'm characterizing what the state courts have done. Do that at your own risk. I am not, I'm not on, I don't sit on the Superior Court. But this is what they have done is that they've kind of run with this distinction. But none of those are in the equivalency context. They're not. They're in whether something can be double counted for the prior record score context. There is no case that I found. We don't know. Exactly in the equivalency context. So then why not give the opportunity to know by sending it back and having the judge make a determination? Well, I would say that there is enough currently existing in the Superior Court to not need to do that. But if the court, if this court were so inclined. But there's nothing. You just answered the question. There's nothing in the equivalency world, right? It's all speculative. I mean, it is, it's tenuous. And if this court were inclined to direct the district court to grant the writ and send it back, I think that your honors are correct. That the appropriate remedy would essentially be a resentencing hearing where he would have the opportunity to make the objection he wishes that he made. And the state courts would then figure it out and decide in the first instance whether there's an equivalency here. I do agree that that would be the appropriate remedy if this court were so inclined to send it back. Do you think it's a recurrent issue in the state courts? The equivalency? On these particular charges? In my review of the case law, most, when I say many, I can't say most, litigants in sentencing just stipulate that 922G and 6105 are the same for purposes of sentencing. So this doesn't get litigated a lot. Which is, I mean, that's not dispositive, right? Stipulation doesn't mean the argument doesn't have any merit. It's just what tends to happen. But I would just reiterate, if this court weren't inclined to send it back, that I would focus on the prejudice aspect of likelihood of success if an objection is lost. How do we gauge that likelihood of success if there's nothing out there to suggest the decision should go one way or another? Well, there's nothing completely on point. Well, it looks like only what the sentencing judge, and again, we're guessing, he looked like he's anchored on the lower sentence. It was 84 under the guidelines. And so he went under that by 12. But if it became less than 84, then he might have gone under that as well, or he might have stayed right where he was at 72. But I can't make that decision for the judge. I think that's true. I do think that there's evidence in the sentencing transcript that there were more considerations at stake, at play rather, than just whatever the guideline range was. Regardless of the other considerations, the judge tethered his sentence to the guidelines. He didn't say that, but I don't think that that's an unfair reading of the transcript. Tethered or anchored. He was basing it on the guidelines. One asked for 60 to 120, one asked for 90 to 180. I'm going to look at the guidelines, and I'm going to go under the guidelines by 12 months. That, right, in the 12 months was a make-do for, a make-up for something else that's not relevant. Exactly right. Yes, and I don't disagree that that is a potential outcome if an objection had been sustained. And my only argument to this court is that though it's not completely on point or dispositive really, that the way the Superior Court has been at least analyzing cases like this, though not in the equivalency context, what might lead me as an advocate to forego an argument like this because I might not think it was a winning argument and there might be stronger ones I could make. Well, why would you forego it at that point? You know, thinking back to when counsel was allegedly ineffective, did any of the cases that you're telling us about, none of those existed at that point. All you had was Jemison, right? And Kepper. Kepper was the 2005 case that... Yeah, but then you had Jemison. Yes, Your Honor. What I just said was referring more to the default issue in PCRA counsel. By the time this was on PCRA, there were other cases from the Superior Court kind of reaffirming this notion that the elements test, that the enumerated list in 6105 is not an element for purposes of sentencing. Even though, as you all pointed out, the High Court has said it is an element for purposes of conviction. Again, I don't sit on the intermediate court in Pennsylvania. I don't know what the distinction is that they're making there, but they do seem to be making a distinction and they've stuck to it. As recently as September, they had an opportunity to overrule the Kepper line of cases and declined. And again, not in the equivalency context, but there are signals that the court may not have been extremely receptive to this argument. The trial counsel didn't object to the categorization of 922G as equivalent to 6105. Correct. There's a good argument that they're not equivalent if nothing else, based on Jemison. And the argument was not made. So, in our world, that seems to be an ineffective assistance of counsel. Now, he may have lost and he may have an appeal or collateral appeal rights, whatever, but I think that what you're talking about never reaches the whole, never up, never in. I think that your point goes to more to, you know, whether counsel performed efficiently, which he may have, but I would still reiterate the prejudice point that in our view, there is no reasonable likelihood of a different outcome, even if counsel should have made this argument and didn't. I disagree with you. I think there is a reasonable, good chance, reasonable likelihood, maybe you're right, it's not greater than 50%, although I would argue it is, it may be 30, 40%, but he was denied that opportunity. I can hear the disagreement with the position. It is acknowledged. And, you know, I think the main point here is just that it's unsettled, right? It's an open question. And if this court were to send it back and seek guidance from the state courts on answering this open question, that wouldn't necessarily be inappropriate. Okay, thank you. Thank you. Thank you. I just want to, I want to start with the point that the linchpin of the Commonwealth's argument is really that the trial court would not have followed Pennsylvania Supreme Court precedent in Jemison on the equivalency issue based off of prior Superior Court decisions that did deal with sentencing, but were not on point at all with respect to the elements issue. Even though Jemison wasn't a sentencing case, it clearly analyzed the elements of 922 G and the elements of section 6105 and said that they were not the same. No matter the circumstance, elements are elements. And I think the trial court would have accepted that argument had it been presented to the trial court by Mr. Moses's counsel during the sentencing. So to that point, I disagree with the Commonwealth that it's speculative or the, whether the trial court would have accepted the argument and that this certainly at least passes the reasonable probability standard for an ineffective assistance of counsel claim. I also just want to emphasize that to counsel's point that the issue hasn't been litigated a lot. I think that is correct, at least in the 922 G section 6105 context. Apologies if you can't hear me, my voice has been going and trying to rest it. But it's likely that this issue just doesn't arise that often. So it is, this very specific issue is somewhat novel. But again, looking at Jemison, especially combined with the line of decisions leading up to Spenny that emphasize the elements-based approach to calculating a prior record score, I don't see any basis for counsel not to have raised this argument and for the trial court to not have, at the very least, seriously considered it and in turn implemented a lower sentence for Mr. Moses. I'm happy to answer any more questions that you have, but those are the points I wanted to make. No more questions. Okay. Thank you, counsel. Thank you. Both counsel for your briefs and arguments. And thank you, Ms. Burton, Mr. Marasty, and Mr. Silver for taking this case on a pro bono case. This is greatly appreciated. Thank you, Your Honor.